OPINION AND AWARD for the Full Commission by DIANNE C. SELLERS, Commissioner, and DISSENT by BERNADINE S. BALLANCE, Commissioner, N.C. Industrial Commission.
 *********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Ledford.
 *********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act, and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier on the risk is Sedgwick CMS.
4. There is no issue as to misjoinder or nonjoinder of the parties.
5. Plaintiff's average weekly wage is $646.97, which corresponds to a weekly compensation rate of $431.31.
6. Plaintiff sustained an injury by accident on or about December 1, 2005.
7. The injury/disease arose out of and in the course of employment, and is compensable.
8. At the commencement of the hearing before the Deputy Commissioner, counsel for Defendants advised that Defendant-Carrier had agreed to pay for Plaintiff's psychological treatment, as recommended by Dr. T. Kern Carlton, III.
 *********
As set forth in the Pre-Trial Agreement and the Opinion and Award of Deputy Commissioner Ledford, the Full Commission addresses the following:
 ISSUES
1. By Plaintiff:
 (a) Whether Defendants may unilaterally without Industrial Commission approval, reduce Plaintiff's temporary total disability payments? *Page 3 
 (b) Whether Defendants should receive credit for a specially modified part-time car wash attendant job?
 (c) Whether Defendants should receive credit for a part-time car wash job since Plaintiff worked such part-time jobs before injury and started the car wash job while working full time for Defendant-Employer?
 (d) Whether Defendants should be ordered to provide vocational assistance for the purpose of locating employment to replace his law enforcement occupation?
By Defendants:
 (a) Are Defendants entitled to a credit as a result of Defendant's payment of full temporary total disability benefits, as opposed to temporary partial disability benefits, to Plaintiff while Plaintiff was earning income from a job that he did not hold prior to his injury?
The Full Commission also addresses the following issue:
 (a) Whether Plaintiff's depression is causally related to his injury by accident?
 *********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Ledford, Plaintiff was 26 years old, having a birth date of May 3, 1983. Plaintiff worked as a deputy sheriff for Defendant-Employer for approximately two and one-half years before his December 1, 2005 admittedly compensable injury by accident. *Page 4 
2. Plaintiff's injury occurred when he fell down an embankment and injured his right knee while chasing a suspect in a rugged, off-road area. This injury was accepted as compensable, however, no Form 60 is contained in the stipulated documents.
3. Plaintiff underwent surgery on his right knee by Dr. John McCormick on January 26, 2006. Unfortunately, Plaintiff later developed Chronic Regional Pain Syndrome (CRPS), also known as RSD.
4. Also following his accident, Plaintiff came under the care of T. Kern Carlton, III, a specialist in physical medicine and rehabilitation at the Rehab Center in Charlotte. Dr. Carlton treats patients with RSD almost every day in his practice.
5. Per Dr. Carlton's testimony, which the Full Commission finds to be reliable and persuasive, Plaintiff's depression is causally related to his injury by accident, resulting pain and inability to return to his prior employment as a deputy sheriff. Dr. Carlton also recommended that Plaintiff have psychological counseling, which was initially denied by the adjuster but which was subsequently agreed to by Defendant-Carrier.
6. Plaintiff has received psychological counseling from Dr. Riley, and the same has been of benefit. The greater weight of the competent, credible evidence shows that Plaintiff is in need of reasonable psychological counseling and Defendants should be responsible for payment for the same.
7. In December 2006, Plaintiff's employment with Caldwell County Sheriff's office was terminated. On or about January 10, 2007, Plaintiff began working with a different employer, the Hudson Police Department.
8. On May 1, 2007, Plaintiff was seen by Dr. Carlton. At this time, Plaintiff's employer the Hudson Police Department was concerned about Plaintiff continuing to perform his *Page 5 
duties while taking his pain medications. Dr. Carlton was concerned that Plaintiff could not function at work without his pain medications and took him out of work as a result. Plaintiff's employment with the Hudson Police Department was terminated on or about June 19, 2007, based on his inability to perform the required job functions.
9. Following Plaintiff's removal from work by Dr. Carlton, and his subsequent termination by the Hudson Police Department, Defendants, believing Plaintiff to be unemployed, reinstated Plaintiff's temporary total disability benefits at a rate of $431.31 per week on or about May 23, 2007. Temporary total disability benefits in the amount of $431.31 were paid from approximately May 23, 2007 to August 13, 2008.
10. Plaintiff began working part-time at Speedy Car Wash, a job which he obtained on his own, on or about September 4, 2006. Speedy Car Wash is owned by Ralph West, a friend of Plaintiff's who had also employed Plaintiff's father in the past. Plaintiff earned $10.00 per hour and worked approximately 25 hours per week. Although Plaintiff had worked part-time jobs prior to his injury, the job at Speedy Car Wash was obtained by Plaintiff following his injury.
11. Plaintiff testified that Mr. West is flexible with Plaintiff's schedule and allows him to come and go as he needs. Mr. West confirmed that he permitted Plaintiff to report to work late and leave early, however, he also indicated that this occurred infrequently. Furthermore, Plaintiff's father, who worked at the car wash in the same position as Plaintiff, testified with respect to the work schedule, "I worked whatever I wanted to work. I was kind of my own boss." Thus, the evidence shows that Plaintiff was not the only employee who was afforded flexibility with respect to his work schedule.
12. While employed by the car wash, Plaintiff was never required to work outside the *Page 6 
restrictions set forth by Dr. Carlton, and enumerated in the functional capacity report. Plaintiff's duties at Speedy Car Wash included clean up activities, ordering chemicals and keeping chemicals in the wash reservoir, and maintenance work, which according to Mr. West was not a "hefty" job. Mr. West testified that a person working in Plaintiff's position was not required to lift more than 35-40 pounds, and that lifting such weights occurred only occasionally. Plaintiff's functional capacity report indicated that he could lift 40 pounds frequently and 80 pounds occasionally. Furthermore, Plaintiff only works approximately four hours per day, which also falls within the parameters of his restrictions, which allow him to work up to 7.5 hours per day.
13. After learning that Plaintiff was receiving wages from Speedy Car Wash, Defendants filed a Form 62 and unilaterally modified Plaintiff's weekly compensation benefits on or about May 8, 2008. Defendants reduced Plaintiff's payments from $431.31 per week to $264.56 per week. This amount was determined by taking two-thirds of the difference between Plaintiff's average weekly wage of $646.97 and $250.00, Plaintiff's admitted weekly earnings at Speedy Car Wash.
14. On February 4, 2008, Plaintiff completed a four-week comprehensive functional restoration program. Dr. Carlton noted that Plaintiff put forth "excellent effort" and made gains in strength, endurance and flexibility. Per Dr. Carlton's discharge summary, Plaintiff could return to work within the restrictions of his functional status report. This report placed him in the work category of medium/heavy, and stated that Plaintiff demonstrated the ability to tolerate a 7.5 hour day within the restrictions of the functional status report, which included lifting 40 pounds frequently and 80 pounds occasionally.
15. Also on February 4, 2008, Dr. Carlton placed Plaintiff at maximum medical improvement and assessed a twenty percent permanent impairment rating to his right leg. Dr. *Page 7 
Carlton opined that Plaintiff is doing well for someone with RSD, and is highly motivated to work. Dr. Carlton further opined that Plaintiff should have been capable of returning to work as outlined in his discharge from the functional restoration program after September 2008. Dr. Carlton also indicated that Plaintiff's depression did not prevent him from working, and that returning to work consistent with the restrictions set forth in Plaintiff's functional status report would, in fact, be beneficial and therapeutic to Plaintiff, and would most likely help with Plaintiff's depression.
16. Although Dr. Carlton found that Plaintiff is physically fit and motivated to work, Dr. Carlton also finds it unlikely that Plaintiff will ever be able to return to law enforcement work, the field of work which comprises most of Plaintiff's work experience. Therefore, Plaintiff may benefit from further educational or vocational assistance.
17. The competent credible evidence of record establishes that Plaintiff's incapacity for work resulting from his work-related injury is partial, and that the job at Speedy Car Wash is suitable.
 *********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. As established by competent medical opinion, Plaintiff's injury by accident and his development of RSD was a significant contributing factor to the Plaintiff's depression. Defendants shall be responsible for payment of all treatment reasonably necessary for Plaintiff's depression. N.C. Gen. Stat. §§ 97-2(19), 97-25;Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E.2d 389 (1980). *Page 8 
2. The Workers' Compensation Act defines "disability" as the "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9). If the capacity to earn wages is totally obliterated, the employee may recover under N.C. Gen. Stat. § 97-29. However, if the wage earning capacity is only diminished, the employee is entitled to benefits under N.C. Gen. Stat. § 97-30. Gupton v. Builders Transp.,320 N.C. 38, 42, 357 S.E.2d 674, 678 (1987). Here, Plaintiff's wage earning capacity has not been totally obliterated, as evidenced by Plaintiff's employment at Speedy Car Wash in a position which he obtained on his volition and which is within his work restrictions. As such, Plaintiff is entitled only to temporary partial disability benefits pursuant to N.C. Gen. Stat. § 97-30, and not temporary total disability benefits under N.C. Gen. Stat. § 97-29.
3. Defendants are entitled to a credit in the amount of $10,838.75 for overpayment of temporary total disability benefits from May 23, 2007 to August 13, 2008, which credit is calculated as follows: Because Plaintiff was earning wages from May 23, 2007 until August 13, 2008, Defendants only owed Plaintiff $264.56 per week during that period, which is calculated by taking two-thirds of the difference between Plaintiff's average weekly wage of $646.97 and his earnings at Speedy Car Wash, which Plaintiff reported to total approximately $250.00 per week. The difference between the amount Plaintiff was paid and the amount that Plaintiff was owed is $166.75 per week. Between May 23, 2007 and August 13, 2008, 65 weekly benefit checks in the amount of $431.31 were paid to Plaintiff. As a result, the overpayment equals $166.75 multiplied by 65 weeks, which equals $10,838.75. N.C. Gen. Stat. § 97-30.
 *********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full *Page 9 
Commission enters the following:
 AWARD
1. Defendants shall pay for any reasonably necessary medical treatment for Plaintiff's depression.
2. Subject to a credit in the amount of $10,838.75 for benefits paid above and beyond what Plaintiff was owed between May 23, 2007 and August 13, 2008, Defendants shall continue to pay Plaintiff temporary partial disability compensation until further order of the Commission, but not to exceed a period of 300 weeks from the date of injury. N.C. Gen. Stat. § 97-30.
3. An attorney's fee of 25% of ongoing compensation due Plaintiff shall be paid to Plaintiff's counsel.
4. Defendants shall provide reasonable vocational assistance and Plaintiff is ordered to comply with the same.
5. Defendants shall pay the costs.
This the 15th day of June, 2010.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 10 
DISSENTING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 11